IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

JAMES LOGAN, )
)
    Plaintiff, )
)
                                             ) CASE NO. 1:12-cv-0003
vs. ) JUDGE HAYNES
)
CORRECTIONS CORPORATION )
OF AMERICA, et al., )
)
    Defendants. )

# MEMORANDUM

Plaintiff, James Lester Logan, filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, against the Defendants: Corrections Corporation of America ("CCA"), Warden Arvil Chapman, Byron Ponds, Jason Casteel, Danny Whitehead, Damon Hinnegar ("CCA Defendants"), Tennessee Department of Corrections ("TDOC"), Derrick Schofield, and Reuben Hodge ("TDOC Defendants"). Plaintiff asserts that Defendants denied him access to the prison's telephones based upon his disability. Plaintiff also asserts Section 1983 claims for violations of his Fourteenth Amendment rights to equal protection, as a hearing-impaired inmate, he was denied equal access to telephones allowed to non-hearing-impaired inmates. Plaintiff's claim under Title VI of the Civil Rights Act of 1964 asserts discrimination on the basis of race, color, or national origin. Plaintiff seeks declaratory relief and damages in the amount of $900,000 for pain and suffering.

Before the Court is the CCA Defendants' motion to dismiss and/or for summary judgment (Docket Entry No. 24) contending, in essence: (1) that Plaintiff fails to show specific

instances of personal involvement by the individual defendants; (2) that Defendants Chapman, Bonds, Casteel, and Whitehead cannot be liable under the ADA in their individual capacities ; (3) that Defendant CCA is not a "public entity" subject to liability under the ADA; (4) that Defendants Chapman, Bonds, Casteel, and Whitehead cannot be held liable under the doctrine of *respondeat superior* under § 1983; (5) and that Defendant CCA maintained appropriate policies regarding telephone use by hearing-impaired inmates. Plaintiff has not filed a response.

Because matters outside of the pleadings have been submitted and considered by the Court, the Court treats the defendants' motion as a motion for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d). This Court must also consider any specific facts in Plaintiff's verified complaint. Williams v. Browman, 981 F.2d 901, 905 (6th Cir. 1992). This memorandum addresses only the CCA Defendants' motion for summary judgment.

### A. Findings of Fact[1]

Plaintiff, James Logan, is an inmate at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. (Docket Entry No. 8, Amended Complaint at 2). SCCF is owned and operated by the Corrections Corporation of America. (Docket Entry No. 26, Defendants'

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-252 (1986), particularly when there has been an opportunity for discovery. Celotex Corp. V. Catrett, 477 U.S. 317 (1986). Because Plaintiff did not file a response to CCA Defendants' State of Undisputed Facts (Docket Entry No. 26) in accordance with Local Rule 56.01(c), Defendants' proffered statements of facts are undisputed for purposes of summary judgment, pursuant to Local Rule 56.01(g) and as a matter of law, the specific facts in Plaintiff's verified complaint do not create material factual disputes. The Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(e).

Statement of Undisputed Material Facts at ¶ 1). Plaintiff is one of two deaf inmates at SCCF. (Docket Entry No. 8, at 7). Although CCA has a Telecommunication Device for the Deaf ("TTY"), Plaintiff asserts that non-hearing-impaired inmates are provided better access to telephones than deaf inmates because prison staff do not know how to operate the TTY. Id. at 8. Plaintiff asserts that prison staff do not want the deaf inmates to use the TTY. Id. Plaintiff asserts that he "can not get to use the TTY Phone at night" and "can not get to use the TTY phone after counts." Id. Plaintiff states:

> At this prison here in Clifton, TN the Corrections Corporation of America - (CCA) don't know how to set up the TTY, the TTY system into Inmate Telephone system and don't want me (James Logan) and Brandon Thygesen to use the TTY Phone in the pod, want to keep the TTY Phone in the office locked up in the closet all the time.

Id.

Plaintiff asserts that all inmates in the Tennessee prison system are allowed to "use the phones to call their [families] any time throughout the day after counts," but deaf inmates must request an appointment to use the TTY. Id. at 7-8. Plaintiff states that hearing-impaired inmates are "suppose to use the TTY phone anytime, not 1 time a week, not one time a day" and that prison staff "will not allow the hearing impaired inmates access to 800 or 711 telephone numbers to reach a relay center." Id. at 8.

Allegedly Defendant Whitehead told Plaintiff that he had never seen a TTY at SCCF. (Docket Entry No. 1, Complaint at 4). Plaintiff does not cite any other actions by any of the individual CCA Defendants in either his complaint or amended complaint.

At all times relevant to Plaintiff's complaint, CCA had policies on inmate telephone use. (Docket Entry No. 26, at ¶ 2). These policies required that hearing impaired inmates be provided

3

access to a TTY. Id. Where both parties to a telephone call have TTY devices, the hearing-impaired inmates may utilize the normal telephones. Id. at ¶ 3. According to policy, inmates are prohibited from making telephone calls to "1-800" numbers. Id. at ¶ 4. An exception is made for hearing impaired inmates who require use of the Tennessee Relay Center for the Deaf, which is itself a 1-800 number. Id. at ¶ 5. Inmates requesting such a call are required to complete and submit a written request. Id. at ¶ 6. Warden Arvil Chapman states that to his knowledge all inmate's telephone requests have been honored under the prison's policy. Id. at ¶ 8.

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's

5

burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrating the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Prod., No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." (quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.

\* \* \*

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) requiring each party to provide a statement of undisputed facts to which the opposing party must respond.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

9

## 1. ADA and Rehabilitation Act Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such an entity." 42 U.S.C. § 12132. To recover on a claim of discrimination under the ADA, Plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. Tucker v. Tennessee, 539 F.3d 526, 532 (6th Cir. 2008) (citation omitted). Additionally, a plaintiff must show that "the discrimination was <u>intentionally</u> directed toward him or her in particular." Id. (emphasis in original). If these requirements are met, "the burden shifts to the defendant to show that the accommodation sought and not provided would have resulted in a fundamental alteration of the procedures or an undue financial or administrative burden." Id. at 532-33.

A "public entity" is defined, in part, as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government..." 42 U.S.C.§ 12131(1). To CCA to be a public entity under § 12132, CCA must be an instrumentality of the state. Although CCA contracts with the state to provide services historically provided by the state and may be eligible to receive receive federal funds, CCA, as a private prison, is not subject to Title II of the ADA. See Park v. KIMC Nashville, No. 3:09-00305, 2009 WL 3834701, at *3 (M.D. Tenn., Nov. 16, 2009) (citing Green v. City of New York, 465 F.3d 65, 78-79 (2d Cir. 2006); Schiavo ex rel. v. Schiavo, 403 F.3d 1289, 1293 (11th

Cir. 2005)). Therefore, the Court concludes that Plaintiff's ADA claim against CCA should be dismissed.

As to Defendants Chapman, Ponds, Casteel, and Whitehead, Title II of the ADA does not provide for personal liability for defendants in their individual capacities. Williams v. McLemore, 247 F. App'x 1, 8 (6th Cir. 2007). Because CCA is not a "public entity" under the ADA, Plaintiff's ADA claim against these Defendants in their official capacities must also fail. Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("[T]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity."). Accordingly, the Court concludes that Plaintiff's ADA claims against Defendants Chapman, Ponds, Casteel and Whitehead in their official and individual capacities should be dismissed.

To the extent that Plaintiff asserts claims under the Rehabilitation Act, 29 U.S.C. § 794 ("RA"), these claims should also be dismissed. The RA provides that:

> "[n]o otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under <u>any program or activity receiving Federal financial assistance</u>....

29 U.S.C. § 794(a) (emphasis added). To establish a violation of the RA, a plaintiff must prove that:

> (1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

Maddox v. University of Tennessee, 62 F.3d 843, 846 (6th Cir. 1995).

To prove a claim under the RA, Plaintiff must make a threshold showing that CCA receives federal financial assistance. Buchanan v. City of Bolivar, 99 F.3d 1352, 1356 (6th Cir.

1996); see Davis v. Flexman, 109 F.Supp.2d 776, 792-93 (S.D. Ohio 1999) (noting Title VI, Title IX and the RA contain similar language prohibiting discrimination by programs or activities that receive federal funding); Grimes v. Superior Home Healthcare of Middle Tenn., Inc., 929 F.Supp. 1088, 1093 n. 4 (M.D. Tenn. 1996) (noting Title VI serves as the model for the RA).

Here, Plaintiff does not offer any proof that Defendant CCA receives federal financial assistance. Raines v. Mitchell, No. 3:09-01025, 2009 WL 3681832, at *3 (M.D. Tenn., Nov. 3, 2009). Thus, the Court concludes that Plaintiff's RA claim against CCA and the individual Defendants in their official capacities should be dismissed. See Nelson v. Miller, 170 F.3d 641, 653 n. 8 (6th Cir. 1999) (RA claim dismissed because not adequately pled receipt of financial assistance); Williams v. Smith, No. 1:10-cv-501, 2010 WL 2816714, at *2 (M.D.N.C., July 15, 2010) (RA claim dismissed because no allegations regarding receipt of federal funds); Phillips v. Tiona, No. 10-cv-00334-PAB-KMT, 2011 WL 2198532, at *12 (D. Colo., March 11, 2011) (Report and Recommendation adopted by 2011 WL 219843, at *2); Paulone v. City of Frederick, 718 F.Supp.2d 626, 634 (D. Md. 2010).

Finally, Plaintiff lacks proof that he was discriminated against solely by reason of his handicap. The undisputed facts are that prisoners are not allowed to call 1-800 numbers. As an accommodation to deaf inmates, Defendants established procedures in which inmates must submit a written request to dial such telephone numbers. Plaintiff has not shown that his written requests have been denied. Thus, the Court concludes that Plaintiff lacks proof that he has been discriminated against solely by reason of his handicap.

### 2. § 1983 Claims

To state a viable claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. Berger v. City of Mayfield Heights, 265 F.3d 399, 405 (6th Cir. 2001).

Section 1983 requires a party to act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" to be liable. Therefore, to be liable under § 1983, the CCA Defendants must be found to be acting under the color of state law. A party performing a traditional governmental function acts under the color of state law. Thomas v. Coble, 55 F. App'x 748, 748 (6th Cir. 2003). Operating a prison for state inmates constitutes action under color of state law. Street v. Corrections Corp. of Amer., 102 F.3d 810, 814 (6th Cir. 1996); Flint ex rel. Flint v. Ky. Dep't of Corr., 270 F.3d 340, 351-352 (6th Cir. 2001). By operating a prison for Tennessee, CCA performs a governmental function and therefore acts under the color of state law under § 1983.

As to Plaintiff's § 1983 claims against Defendants Chapman, Ponds, Casteel, and Whitehead in their individual capacities, Plaintiff lacks proof of any personal involvement by these individual Defendants. Plaintiff does not cite any specific instances where any of these Defendants personally restricted his access to the TTY or treated him less favorably than non-hearing-impaired inmates. "It is well settled that to state a cognizable section 1983 claim, the Plaintiff must show some personal involvement by each of the named defendants." Bennett v. Schroeder, 99 F.App'x 707, 712-13 (6th Cir. 2004).

To the extent that Plaintiff sues these Defendants in a supervisory capacity, for such claim, the Section 1983 plaintiff must show that the defendant was either directly or personally

13

involved in the alleged unconstitutional activity. Dunn v. State of Tennessee, 697 F.2d 121, 128 (6th Cir. 1982). "What is required is a causal connection between the misconduct complained of and the official sued." Id. Liability under § 1983 must be based on more than *respondeat superior* or the right to control employees. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

Id. at 300 (citations omitted).

Plaintiff lacks any evidence that these Defendants had any direct or personal involvement in authorizing, approving, or knowingly acquiescing in any alleged unconstitutional conduct. This record that does not reflect otherwise. Accordingly, the Court concludes that the Plaintiff's § 1983 claims against these individual Defendants in their individual capacities should be dismissed.

Incarcerated persons retain their First Amendment rights to communicate with family and friends. Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (citation omitted). The First Amendment protects reasonable access to the telephone for inmates and no legitimate governmental purpose may be attained by unreasonably restricting access to the telephone. Id. (citation omitted). Yet, this right is limited. Id. (citation omitted). The right of telephone access by a prisoner is "'subject to rational limitations in the face of legitimate security interests of the penal institution.'" Id. (quoting Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)). The extent of telephone access allowed is determined by prison administrators, subject to a court's determination as to unreasonableness. Id. (citations omitted). "[P]rison regulations that

14

impinge on an inmate's constitutional rights are valid if they are 'reasonably related to legitimate penological interests.'" Colvin v. Caruso, 605 F.3d 282, 293 (6th Cir. 2010) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

CCA cannot be held liable on the theory of *respondeat superior* or vicarious liability. Street v. Carr. Corp. Of Am., 102 F.3d 810, 818 (6th Cir. 1996). To prove a violation under § 1983 of a prisoner's First Amendment right to communicate by telephone, Plaintiff must show that CCA's "'policy or custom'... played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Plaintiff does not dispute that TTY devices are available at SCCC for use by deaf inmates. According to CCA policy, inmates are generally not allowed to make 1-800 telephone calls. Deaf inmates, however, are allowed to make calls through the Tennessee Relay Center for the Deaf, that is itself a 1-800 number, provided that the inmate complete and submit a written request. According to Chapman, as long as Plaintiff complies with this policy, Plaintiff's access has not been prohibited. Plaintiff lacks proof that he was denied access after making a request according to the policy. Nor does Plaintiff show any specific instances when he was denied access or by whom. Rather, Plaintiff objects to having to ask for an appointment to make a TTY call in the office. (Docket Entry No. 8, at 8). Instead, Plaintiff states that deaf inmates are supposed to be able to use the TTY any time. Id. Yet, allowing hearing-impaired inmates unfettered access to the TTY is not required, as inmates do not have a right to unlimited telephone use. Washington, 35 F.3d at 1100. Based upon the undisputed facts, a rational trier of fact could not find CCA's policy is unreasonable.

The Equal Protection Clause of the Fourteenth Amendment states that no State shall

"deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. Under the Equal Protection Clause, a plaintiff must demonstrate that a state actor intentionally discriminated against him because of membership in a protected class. Midkiff v. Adams County Reg'l Water Dist., 409 F.3d 758, 770 (6th Cir. 2005). "Disabled persons are not a suspect class for purposes of an equal protection challenge....A state may therefore treat disabled persons differently, so long as its actions are rationally related to some legitimate governmental purpose." S.S. v. Eastern Kentucky Univ., 532 F.3d 445, 457 (6th Cir. 2008) (citing Tennessee v. Lane, 501 U.S. 509, 522 (2004)).

The undisputed facts show that inmates are not allowed to call 1-800 telephone numbers. To use the Tennessee Relay Center for the Deaf, an inmate must submit a written request. Plaintiff does not show that he complied with this process or was denied access after submitting a written request. Plaintiff fails to establish differential treatment from similarly situated inmates. Because Plaintiff is allowed to make a 1-800 call to the Relay Center, upon a written request to do so, Plaintiff is not similarly situated to non-hearing-impaired inmates as to the use of 1-800 telephone numbers. See Spurlock v. Simmons, 88 F.Supp.2d 1189, 1194 (D.Kan. 2000) (denying plaintiff's equal protection claim, where plaintiff who could not use the regular inmate telephone system but had to use the facility phone was not similarly situated to those inmates who were able to use the regular telephone system); Douglass v. Gusman, 567 F.Supp.2d 877, 887 (E.D. La. 2008) (citing Spurlock); Flowers v. Metrish, No. 08-cv-1007-DT, 2009 WL 512461, at *7-8 (E.D. Mich. Feb. 27, 2009). For these reasons, the Court concludes that this equal protection claim should be dismissed.

### 3. Title VI Claim

As to Plaintiff's claim under Title VI, 42 U.S.C. § 2000d provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." The purpose of Title VI was to "halt federal funding of entities that violate a prohibition of racial discrimination similar to that of the Constitution." Neighborhood Action Collection v. City of Canton, 882 F.2d 1012, 1014 (6th Cir. 1989).

To maintain a private right of action under Title VI, a plaintiff must make a threshold showing that CCA receives federal assistance. Raines, 2009 WL 3681832, at *3 (citing Buchanan, 99 F.3d at 1356). Here, Plaintiff does not prove that CCA receives federal assistance or that the use of the TTY is federally funded. Actual federal assistance benefits are necessary for a Title VI claim. Id. (citing Grove City College v. Bell, 465 U.S. 555 (1984)). Moreover, Plaintiff does not allege that he is a racial minority or any facts that he was discriminated against based upon his race, color, or national origin. Accordingly, the Court concludes that this claim should be dismissed.

As to the remaining CCA Defendant, Damon Hinnegar, Plaintiff does not show any personal involvement by Hinnegar. Accordingly, the Court concludes that Hinnegar is entitled to dismissal of all claims against him for the same reasons as Chapman, Ponds, Casteel, and Whitehead.

For these reasons, the Court concludes that the CCA Defendants' motion to dismiss and/or for summary judgment should be granted.

An appropriate Order is filed herewith.

ENTERED this the 18th day of June, 2012.

                                              WILLIAM J. HAYNES, JR.
                                              United States District Judge